# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO: 3:09-CV-03-RLV-DCK

| | |
|---|---|
| VENUS L. MOORE, | ) |
| Plaintiff, | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| vs. | ) |
| TIME WARNER CABLE, INC., | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss Plaintiff's Complaint" (Doc. No. 4), filed on January 14, 2009, by Time Warner Cable, Inc. ("Defendant" or "Time Warner"). Venus L. Moore ("Plaintiff") opposes the motion. This matter has been referred to the Magistrate Judge and is ripe for review. Having fully considered the record, including the parties' briefs and applicable authority, the undersigned recommends that the motion be **granted in part** and **denied in part**, based on the following proposed findings of fact and conclusions of law:

## I. BACKGROUND

Venus L. Moore, a former employee of Time Warner, has sued the Defendant, alleging two state law claims: (1) wrongful termination in violation of the North Carolina Equal Employment Practices Act ("NCEEPA," N.C. Gen. Stat. § 143-422.2); and (2) negligent supervision and negligent retention under the common law of North Carolina.[1] Plaintiff worked as a staff accountant at Time

---

[1]On January 7, 2009, Defendant indicated that Plaintiff's actual employer was Time Warner Entertainment Company, L.P., a Delaware corporation with its principal place of business in New York. Defendant indicated it will stipulate to a corrected caption naming the proper entity if Plaintiff files for correction. (Document Nos. 1, p. 1, fn.1; and No. 5, p. 1, fn.1). Plaintiff has not yet done so.

Warner from May 2008 until she was terminated five months later in October 2008. Plaintiff alleges that during her employment she was scheduled to work on Sundays, was subjected to "derogatory statements about religion in general" and "derogatory statements about her unavailability to work on Sunday due to church attendance," was re-assigned in an attempt to force her to quit, and ultimately was terminated from employment. (Document No. 1-2, p. 5).

In November 2008, Plaintiff filed a complaint in the General Court of Justice, Superior Court Division for Mecklenburg County, North Carolina, Case No. 08-CVS-25318. On January 7, 2009, Defendant timely removed the case to federal court based on diversity jurisdiction, indicating that the matter in controversy is expected to exceed $75,000.00 and is between citizens of different states. 28 U.S.C. §§ 1441, 1446, 1332(a).

On January 14, 2009, Defendant moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendant contends principally that: (1) Plaintiff's claims must be dismissed because there is no private right of action under the NCEEPA; and (2) the negligent supervision and retention claims are preempted by and subject to the exclusivity provision of the North Carolina Worker's Compensation Act, and even if not so preempted, fail as a matter of law because they are insufficiently pled.

As more fully set out below, the undersigned recommends that, at this stage of the pleadings, the Plaintiff has sufficiently stated a claim of wrongful discharge in violation of public policy. However, Plaintiff's negligent supervision and retention claim, as pleaded, fails as a matter of law and should be dismissed.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the "legal

sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356 (1990); Fed. R. Civ. P. 12(b)(6)). The issue is not whether the Plaintiff will ultimately prevail, but rather, whether Plaintiff is entitled to offer evidence to support her claims.

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The United States Supreme Court recently emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* – U.S. – , 129 S.Ct. 1937, 1954 (2009). The court "should view the complaint in the light most favorable to the Plaintiff." *Mylan Labs, Inc. v. Matkari*, 1130, 1134 (4th Cir. 1993). The court must accept as true all well-pleaded factual allegations in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002), but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Jonson*, 520 F.3d 298, 302 (4th Cir. 2008); *see also, Eastern Shore Markets, Inc. v. J.D. Associates Long Term Disability P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. DISCUSSION

#### A. <u>Wrongful Discharge in Violation of Public Policy</u>

The Complaint initially sets forth the factual allegations, and then in "Count One," concludes that "the Defendant Company is liable to the Plaintiff for wrongful termination due to religious discrimination and for subjecting her to harassment because of her religious preferences, including

a Hostile Work Environment and for disparate treatment in the terms and conditions of her employment in violation of NCGS § 143-422.2." (Document No. 1-2, p. 7). Despite her scattershot approach, Plaintiff essentially contends that the Defendant's allegedly discriminatory behavior toward her culminated in her discharge from employment.

In North Carolina, the employer-employee relationship is governed by the at-will employment doctrine. *Kranz v. Hendrick Automotive Group, Inc*., 674 S.E.2d 771, 773 (N.C.App. 2009); *Considine v. Compass Grp. UNITED STATES, Inc*., 145 N.C.App. 314, 317, *aff'd*, 354 N.C. 568 (2001) (per curiam) ("The discharge of an employee at will generally does not support an action for wrongful discharge in this state."). This is a bright-line rule with only a few limited exceptions, one of them being wrongful discharge in violation of the public policy of North Carolina. *McDonnell v. Guilford County Tradewind Airlines, Inc*., 670 S.E.2d 302, 305 (N.C.App. 2009); *Gillis v. Montgomery County Sheriff's Dept*., 191 N.C.App. 377, 380 (2008). The North Carolina Supreme Court first recognized a public policy exception to the employment-at-will doctrine in *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175 (1989) ("[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy.").

"To state a claim for wrongful discharge in violation of public policy, an employee must identify a North Carolina public policy and plead that she was discharged for an unlawful reason or purpose that violates the public policy." *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 544 fn.8 (E.D.N.C. 2009). "[T]he employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy." *Salter v. E & J Healthcare*, Inc., 155 N.C.App. 685, 693-94 (2003); *Kranz*, 674 S.E.2d at 773; *McDonnell*, 670 S.E.2d at 307.

Although Plaintiff's allegations are not a model of clarity, the organization of her Complaint can fairly be read as asserting a claim for the state tort of wrongful discharge in violation of public policy. In her Complaint, Plaintiff cites the North Carolina Equal Employment Practices Act ("NCEEPA"), which provides:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen.Stat. § 143-422.2 (2009).

Plaintiff contends that she was wrongfully terminated due to religious discrimination in violation of the NCEEPA.[2] In the factual section of her Complaint, she alleges that when she was hired, she advised unnamed "hiring officials" that she could not work on Sundays due to church attendance. (Document Nos. 1-2, p. 5).[3] She indicates that her supervisor nonetheless scheduled her to work on Sundays. She also somewhat vaguely complains that unidentified persons made "derogatory statements about religion in general" and that "the harassing behavior occurred on

---

[2]The Complaint contains a possible discrepancy as to whether Plaintiff quit or was discharged. She alleges that Defendant required her to work on Sundays, in order "to force her to quit," (Doc. No. 1, Exh. 1 at 5, ¶ VIII), but then indicates that "she was terminated in October, 2008." (*Id.* at 6, ¶ IX). These allegations are construed as meaning that Defendant discharged Plaintiff after attempting to force her to quit. If Plaintiff resigned, North Carolina does not provide a private cause of action for constructive discharge. *McFadden v. Trend Cmty. Health Services*, 114 F. Supp. 2d 427, 430 (W.D.N.C. 2000); *Ravan v. Forest Pharms., Inc.*, 2009 WL 1152190, at *3 (W.D.N.C., April 15, 2009).

[3]Although she alleges that "Time Warner" was aware that she attended bible study after work hours, on her lunch hour, and on certain week nights, she makes no claim that her work schedule interfered with these activities in any way.

almost a daily basis." (*Id*. at 5-6).[4] She indicates that after she complained to the "human resource manager and other company officials," her duties were reassigned, but she still had to work on Sundays. She attributes this to "retaliation" in order to "force her to quit." (*Id*.). She concludes that "the only reason for her termination is due to religious discrimination."

Taking Plaintiff's allegations as true and construing all reasonable inferences in her favor, the undersigned recommends that, at this stage of the pleadings, Plaintiff has stated a claim for wrongful discharge in violation of NCEEPA. See *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353 (1992) ("at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes"); and see, e.g, *Walker v. Novo Nordisk Pharmaceutical Industries, Inc*., 2000 WL 1012960, *2 (4th Cir. (N.C.)) (discussing Title VII claim where Plaintiff alleged that his employer refused to accommodate his religious beliefs by requiring him to work on Sundays and terminated him because of his religious beliefs and his request for accommodation). Of course, the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Republican Party,* 980 F.2d at 952*.* The motion to dismiss should be denied with respect to this claim.

The Court notes that, as pleaded, it is not entirely clear whether Plaintiff is also attempting to assert additional state claims for harassment, retaliation, and disparate treatment.[5] Plaintiff may not do so. North Carolina courts and federal courts interpreting North Carolina law have repeatedly held that NCEEPA does *not* provide additional private causes of action for harassment, retaliation,

---

[4]Notably, Plaintiff has not alleged violation of Title VII.

[5]The heading in Plaintiff's brief refers to "Plaintiff's Claims of Wrongful Termination, Harassment, Disparate Treatment, and Retaliation." Plaintiff has only one cause of action here, namely, wrongful discharge in violation of public policy. (Document No. 7, p. 5).

hostile work environment, disparate treatment, or constructive discharge. See *McLean v. Patten Communities, Inc*., 332 F.3d 714, 719 (4th Cir. 2003) (holding that harassment and retaliation are not common law torts in North Carolina and that there is no private right of action under North Carolina law for retaliation under NCEEPA at § 143-422.2); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (holding there is no separate private cause of action for sexual harassment); *Jones v. Duke Energy Corp.*, 43 Fed. Appx. 599, 600 (4th Cir. 2002) ("no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy."); *Bratcher*, 545 F. Supp. 2d at 543-544 ("North Carolina does not recognize a private cause of action under the NCEEPA."); *Ravan*, 2009 WL 1152190, at *3 (same, collecting cases).

As the Fourth Circuit Court of Appeals recently explained, "[t]he distinguishing feature between the claim disallowed in *Smith* and the claim allowed in *McLean* is that the claim allowed in *McLean* alleged a wrongful discharge because of the plaintiff's refusal of sexual favors to her supervisor, while the claim disallowed in *Smith* did not allege wrongful discharge, just sexual harassment. *Townsend v. Shook*, 323 Fed. Appx. 245, 251 (4th Cir. 2009). Thus, to the extent Plaintiff is attempting to assert any additional state claims under the NCEEPA separately from her claim of wrongful discharge, dismissal is appropriate.

**B. Negligent Supervision and Retention**

In "Count Two" of the Complaint, Plaintiff alleges that the Defendant "is liable ... for Negligent Supervision and Retention of all employees who engaged in harassing, discriminatory, illegal and inappropriate conduct in the workplace." (Doc. No. 1-2, at 8). Defendant argues that the negligent retention and supervision claim is preempted by the North Carolina Workers'

Compensation Act ("WCA"). However, the WCA was created to compensate workers who were physically injured "by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6). Plaintiff's Complaint does not assert either an accident or any injury, and thus, the WCA is wholly inapplicable to the facts in this case. Plaintiff is complaining of her discharge from employment, not any "injury" incurred while working.

In support of its argument, Defendant relies on cases where physical injury to the Plaintiff was at issue. For example, Defendant cites *Rathbone v. Haywood Co.*, No. 1:08-CV-117, 2008 WL 2789770, at *3 (W.D.N.C.) (dismissing negligent supervision retention claim as barred by the WCA's exclusivity provision). However, that case involved a situation where the Plaintiff (age 53) was injured on the job and his supervisor failed to fill out a report for the North Carolina Industrial Commission documenting the accident and injury. The Court held in *Rathbone* that "[i]t is well settled that when an employee's injury is compensable under the Act, exclusive jurisdiction lies in the North Carolina Industrial Commission, and a civil action based on negligence or even willful or wanton negligence cannot lie." *Id*. As the present case does not involve an accidental injury or a claim to the North Carolina Industrial Commission, Defendant's reliance is misplaced.

Defendant further argues that the Plaintiff has failed to allege the essential elements of a claim for negligent supervision and retention. (Document No. 5, p. 9). To state the elements of this claim, Plaintiff must allege: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith*, 202 F.3d at 250 (citing *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, 124 (1986)); *Smith v. Privette*, 128 N.C.App. 490, 495 (1998). North Carolina law requires, as "[a]n essential element of a claim for negligent retention," that an

employee of the employer "committed a tortious act resulting in plaintiffs' injuries." *Waddle v. Sparks*, 331 N.C. 73, 88 (1992). Plaintiff's Complaint fails on the first element, as it simply does not allege that "incompetent employee committed a tortious act resulting in injury to the plaintiff."

Moreover, Plaintiff's allegations regarding this claim are entirely conclusory. "The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Migdal v. Rowe Price-Fleming Intl Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) ("although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant").

Plaintiff generally alleges in conclusory fashion that Defendant is liable for "all employees" who engaged in any "discriminatory" acts toward her, including her supervisor. Plaintiff merely alleges that "harassing, discriminatory, and illegal and inappropriate conduct in the workplace" occurred.[6] On a motion to dismiss, the Court must take all well-pleaded factual allegations as true. However,"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Plaintiff's claim for negligent retention consists merely of conclusory statements and lacks adequate underlying facts to support the claim. *See Eastern Shore Markets,* 213 F.3d at 180. Plaintiff's conclusory assertion of "negligent supervision and retention" fails to sufficiently state a claim for relief and should be dismissed.

Finally, Plaintiff contends in her conclusion that the Court should allow an amendment to

---

[6]Additionally, harassment is not a common law tort in North Carolina. *See McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 720 (4th Cir. 2003).

the pleadings pursuant to Rule 15 of the Federal Rules of Civil Procedure to cure any defects and deficiencies in her complaint. However, "[Plaintiff may not amend her complaint through a memorandum of law opposing a motion to dismiss." *Bratcher*, 525 F. Supp. 2d at Footnote 8. Local Civil Rule 7.1(C)(2) prohibits motions in responsive briefs. If Plaintiff wishes the Court to consider a request for leave to amend her Complaint, she must do so in a separately filed motion.

## IV. RECOMMENDATION

**IT IS, THEREFORE, RECOMMENDED** that Defendant's "Motion to Dismiss" (Doc. No. 4) should be **Granted in part** and **Denied in part** as follows:

> 1. The motion to dismiss should be **DENIED** as to Count One, because the Complaint adequately states a claim for wrongful discharge in violation of North Carolina public policy; and
>
> 2. The motion should be **GRANTED** as to Count Two; Plaintiff's claim for negligent supervision and retention should be **dismissed with prejudice.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir. 1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from

raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

      Signed: September 28, 2009

David C. Keesler
United States Magistrate Judge